UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FELIX ORIAKHI,                          :
                                        :
                    Plaintiff,          :
                                        :   CIVIL NO. 3:CV-05-0053
          v.                            :
                                        :   (CHIEF JUDGE VANASKIE)
TIMOTHY P. WOOD, ET AL.,                :
                                        :
                    Defendants.         :


M E M O R A N D U M

I.    Introduction

          Plaintiff, Felix Oriakhi, an inmate currently confined at FCI-Fort Dix, Fort

Dix, New Jersey, initiated this combined Federal Tort Claims Act ("FTCA") and Bivens-

type[1] civil rights action on January 10, 2005.  Oriakhi complains of an allegedly

retaliatory "search and confiscation" of his legal materials at FCI-Schuylkill, his former

place of incarceration.  Oriakhi has been granted leave to proceed in forma pauperis.

Oriakhi names as Defendants the United States of America along with FCI-Schuylkill

staff members Timothy Wood and Linda Edwards.  Plaintiff seeks compensatory and

punitive damages.

---

[1]  In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,
403 U.S. 388 (1971), the Supreme Court recognized a private cause of action to recover
damages against a federal agent for violations of constitutional rights.

Following service of the Complaint, Defendants filed a Motion to Dismiss, or in the alternative, for Summary Judgment.  (Dkt. Entry 25.)  The motion has been briefed and is ripe for consideration.  For the reasons discussed in this memorandum, the motion for summary judgment will be granted.

## II.    Procedural History

Defendants' motion is based on: (1) the doctrine of sovereign immunity; (2) failure to state a viable <u>Bivens</u> claim; (3) failure to state a suitable FTCA claim; and (4) the unavailability of monetary damages under either <u>Bivens</u> or the FTCA due to the absence of physical injury.  In support, defendants have submitted a statement of facts, brief, reply brief and exhibits, including the unsworn declaration of defendant Wood.

Oriakhi filed an opposition brief, a surreply brief, and exhibits.  In addition to his own declaration, Oriakhi has submitted a statement from another inmate who was in FCI-Schuylkill's law library on February 4, 2004, when defendant Wood searched Oriakhi and confiscated the legal materials in his possession.  Oriakhi did not file a separate response to Defendants' Statement of Material Facts.

## III.    Statement of Relevant Facts

On February 4, 2004, between the hours of 5:30 p.m. and 8:30 p.m., Oriakhi was conducting legal research in FCI-Schuylkill's law library.  At approximately 6:00 p.m., Oriakhi approached defendant Wood, the staff member in charge of the law

library at the time, to complain that a particular book he needed had been missing for a period of time and requested information as to when it would be replaced.  (Dkt. Entry 1, Complaint.)  Dissatisfied with defendant Wood's answer, Oriakhi requested a "cop out," or institutional grievance form, from defendant Wood.  At this point defendant Wood ordered Plaintiff out of his office.  (Id.)

At approximately 7:45 p.m. defendant Wood conducted a search of Oriakhi and the legal materials in his possession for contraband.  (Wood Aff. at ¶ 3.)  Wood found the following unauthorized items in Oriakhi's pockets: cooked collard greens and an unknown rubber substance.  (Id. at ¶ 4.)  Wood also found in Oriakhi's possession legal materials that belonged to inmates Riddick, Okafor, and Mendez.  (Id.)   The perishable items were confiscated and discarded.  (Id. at ¶ 5.)  Because the law library was scheduled to close soon, Wood collected the legal materials of the other inmates from Oriahki and retained them in anticipation of the owners retrieving them prior to the library closing.  (Id. at ¶ 6.)  Riddick, Okafor and Mendez did not retrieve their legal documents prior to the library closing that night at 8:30 p.m.  (Id. at ¶ 7.)  Wood took the confiscated legal materials to the Lieutenant's Office for retention and security purposes. (Id.)  Wood issued Oriakhi an incident report due to his possession of contraband.  (Id. at ¶ 8.)

The incident report was heard by Oriakhi's Unit Discipline Committee

("UDC").  (Dkt. Entries 1, Complaint and 34, Plaintiff's Opposition Brief, Exhibit V,

February 4, 2004-Incident Report.)  Defendant Edwards, Oriakhi's Unit Manager, was a

member of the UDC.  The UDC determined that Plaintiff had committed the prohibited

act charged and directed that he perform 10 hours of extra duty.

       The parties dispute whether any of Oriakhi's personal legal materials were

confiscated by Wood on February 4, 2004.  Wood contends that he did not confiscate or

seize any of Oriakhi's personal legal materials during the search.   (Wood Aff. at ¶ 9.)

Oriakhi claims that, in addition to the legal papers of the three identified inmates

(Riddick, Okafor, Mendez), his legal materials and those of inmate Scantlebury were

also confiscated.  Oriakhi submits that his legal materials for "two federal pending cases"

and a "family case" were confiscated and never returned to him.  (Dkt. Entry 34,

Plaintiff's Opposition Brief, Exhibit III, Plaintiff's Declaration.)  Oriakhi asserts that "the

legal materials contained in the confiscated envelopes was vital and important in [his]

defense on the pending federal cases which resulted in [his] inability to produce certain

material documents to support my claims in the actions."  (Id. at ¶ 21.)

## IV.    Standard of Review

       Summary judgment should be granted when "the pleadings, depositions,

answers to interrogatories, admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  The substantive law determines which facts are material and which facts are irrelevant.  Id. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250.  If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 587 (1986) (citing First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968)).  All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true'." Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 512 (3d Cir. 1994) (citing Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992); Wicker v. Consol. Rail Corp., 142 F.3d 690, 696 (3d Cir. 1998).  The Court however is not required to credit "mulled allegations" or "legal conclusions." Morse v. Lower Merion School Dist., 132 F. 3d 902, 905 (3d Cir. 1997).

-5-

The moving party bears the initial responsibility of stating the basis for its motion, identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  As a general rule, unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir.1993).  The moving party must present competent evidence to support their version of events.  Likewise, the nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment."  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257(1986))(emphasis in Williams).  The nonmoving party cannot "simply reassert factually unsupported allegations contained in [the] pleadings."  Williams, 891 F.2d at 460 (citing Celotex, 477 U.S. at 325).  "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the nonmoving party . . . 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file'."  Pastore, 24 F.3d at 511 (citing Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992)).  If the evidence in favor of the nonmoving party is merely colorable or not significantly probative, summary judgment should be granted.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986)).

## V.    Discussion

### A.    Sovereign Immunity Bars Oriahki's Claims for Monetary Damages against the Individual Defendants in their Official Capacities.

Oriakhi's suit seeking monetary damages for alleged constitutional violations by defendants Wood and Edwards in their official capacities as employees of the Federal Bureau of Prisons is barred by the doctrine of sovereign immunity.  Claims asserted against agencies of the United States government, such as the BOP, or federal officers in their official capacities are considered to be maintained against the United States and are barred under the doctrine of sovereign immunity.  FDIC v. Meyer, 510 U.S. 471, 475 (1994); Terrell v. Hawk, 154 Fed. Appx. 280 (3d Cir. 2005).  While the government can waive that immunity, such a waiver "must be unequivocally expressed in statutory text ... and will not be implied."  Lane v. Pena, 518 U.S. 187, 192 (1996); Cudjoe v. Department of Veteran Affairs, 426 F.3d 241, 246 (3d Cir. 2005).  Oriakhi's assertion that BOP non-defendants, who denied various steps of his administrative remedy process, can waive sovereign immunity is wholly unsupported by fact or law.  Oriakhi may not recover monetary damages from Wood or Edwards for actions committed in their official capacities.

B.     Wood's Search of Oriakhi and his
       Personal Effects did not Violate the Fourth
       Amendment.

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend IV. However, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson v. Palmer, 468 U.S. 517, 527-28 (1984). Within the prison environment, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves." Wilkinson v. Austin, 125 S.Ct. 2384, 2396 (2005). Clearly the legitimate prison objective of maintaining constant security far outweighs a prisoner's right of privacy. Bell v. Wolfish, 441 U.S. 520, 539-41 (1979).

Pursuant to BOP Program Statement 5521.05, Searches of Housing Units, Inmates, and Inmate Work Areas, (June 30, 1997), staff members are encouraged to conduct searches of inmates and their personal effects "on routine or random basis to control contraband." (Dkt. Entry 29-2, Exhibits in Support of Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, Exhibit 2, Program Statement 5521.05, Searches of Housing Units, Inmates, and Inmate Work Areas, (June 30, 1997).) Such searches may be conducted without notice or approval of the inmate and

may include the inmate's legal materials.  <u>See</u> 28 C.F.R. § 552.11(a), <u>Body Searches of</u>

<u>Inmates</u>; 28 C.F.R. § 552.14, <u>Search of Inmate Housing and Work Areas</u>; and 28 C.F.R.

§ 543.11(d)(1), <u>Legal Research and Preparation of Legal Documents</u>.  Inmates may

assist another inmate with legal research and the preparation of legal documents, and

may possess the legal materials of another inmate.  However, the assisting inmate may

not remove another inmate's legal materials, including copies of the legal materials, from

the law library.  <u>See </u>28 C.F.R. § 543.11(f)(2)(b).

Based on the above, Wood, as a BOP employee, was authorized to

conduct a search of Oriakhi and his property for contraband.  Oriakhi was found to be in

the possession of contraband as a result of the search: collard greens and an

unidentified rubbery substance.  As such, Oriakhi fails to state a claim for the violation of

his Fourth Amendment rights premised exclusively on the search of his person and legal

property in his possession.  <u>Hudson</u>, <u>supra</u>.   Moreover, Oriakhi's claim that Wood

neglected to follow BOP policy with respect to his search does not afford a basis for

relief as a violation of prison regulations in itself is not a constitutional violation.  <u>Gibson</u>

<u>v. Federal Bureau of Prisons</u>, 121 Fed. Appx. 549, 551 (5th Cir. 2004).

C.    **Plaintiff's Retaliation Claim is**
      **Unsupported.**

Actions undertaken in retaliation for the exercise of a constitutional right

can form the basis of a § 1983 complaint, even when the act, taken for a different

reason, might have been legitimate.  See White v. Napoleon , 897 F.2d 103, 111-12 (3d Cir.1990).   A plaintiff alleging retaliation bears the initial burden of showing that: (1) he was engaged in a constitutionally protected activity; (2) that he suffered an "adverse action" at the hands of prison officials; and (3) that his constitutionally protected activity was the substantial or motivating factor in the prison officials' decision to discipline the plaintiff.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  The burden then shifts to the defendant to show by a preponderance of the evidence that the plaintiff would have received the same punishment, or alternatively stated, that defendant would have taken the same action, absent the retaliatory motive for reasons reasonably related to a legitimate penological interest.  Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001).

In this case, Oriakhi argues that the search of his person and legal materials, while constitutionally permissible within the context of a prison setting, was conducted in retaliation for his questioning Wood about the replacement of a lost library book earlier that evening.  (See Dkt. Entry 1, Complaint at ¶ 20; Dkt. Entry 34, Plaintiff's Opposition Brief; see also Exhibit III, Plaintiff's Declaration at ¶ 22.)  Oriakhi alleges that defendant Wood's search and confiscation of his legal materials violated his First Amendment right to freedom of expression.  (Dkt. Entry 1, Complaint at ¶ 16.)

Although a prisoner's rights are limited within the prison setting, First

Amendment rights are retained if they are not inconsistent with the person's status as a prisoner or the legitimate penological objectives of the corrections system.  Pell v. Procunier, 417 U.S. 817, 822 (1974).  The Third Circuit has held that the filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir.1981).  Courts have also held that the filing of grievances is protected under the First Amendment right to petition the government for a redress of grievances.   See, Allah v. Al-Hafeez, 208 F. Supp. 2d 520 (E.D. Pa. 2002).

Oriakhi identifies as the protected activity at issue here the verbal encounter with Wood regarding the replacement of a lost law library book, which ultimately led to Wood "snapping" at him and ordering him to leave his office.  This brief and isolated verbal inquiry does not constitute protected First Amendment speech.  To construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.  In order to receive First Amendment protection, an inmate's speech must relate to a matter of public concern. McElroy v. Lopac, 403 F.3d 855, 858 (7th Cir. 2005)(inmate's inquiry about pay for lost job was not a matter of public concern.)  "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a

constitutional case." Connick v. Myers, 461 U.S. 138, 149 (1983).

Nonetheless, even if the Court were to consider for the sake of resolving this motion only, that Plaintiff met his burden with respect to demonstrating that he was engaged in a constitutionally protected activity, he does not satisfy the requisite second prong of a retaliation claim – some "adverse action" as a result of Wood's retaliatory search. Oriakhi asserts that he suffered two forms of adverse action as a result of Wood's retaliatory search: (1) the confiscation of his legal materials which resulted in loss of non-frivolous legal actions; and (2) his receipt of 10 hours of "extra duty."

While there is a dispute of fact as to whether Wood confiscated any of Oriakhi's personal legal materials on February 4, 2004, and then disposed of them, this dispute is not material and does not prevent the Court from resolving Oriakhi's retaliation claim. Assuming that Wood did confiscate Oriakhi's legal materials, Oriakhi has failed to demonstrate that he suffered any harm as result of the loss of these materials. An access-to-the-courts claim requires an actual injury imposing some concrete negative effect on a prisoner's attempt to seek judicial redress, either in pursuing an existing non-frivolous lawsuit or in the loss of the opportunity to pursue one at all. Lewis v. Casey, 518 U.S. 343, 351 (1996). "Actual injury" includes the loss of a non-frivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. Id. at 351-54. Prisoners asserting denial of

-12-

access to the courts claims must demonstrate their "actual injury" with specificity.  See

Gordon v. Morton, 131 Fed. Appx. 797, 798 (3d Cir.2005) (holding that inmate's claim

against corrections officers for alleged deprivation of access to the courts failed where

he did not demonstrate actual injury).  Oriakhi has not this burden.

        Oriakhi claims that he "suffered a dismissal and denial" of two then-

pending federal cases due to the loss of legal materials confiscated by Wood.  (See Dkt.

Entry 34, Plaintiff's Opposition Brief, p. 10.)  This Court is familiar with both cases

referenced by Oriakhi.

        The first is Oriakhi v. United States, No. 3:CV-01-0850 (M.D. Pa.)(C.J.

Vanaskie), which was pending nearly three years as of February 4, 2004, and was

nearing trial on a tort claim related to the disputed confiscation of Plaintiff's pornographic

magazine collection and two microwave bowls.  On February 25, 2004, the Court held a

telephonic status conference in the case to discuss the parties' readiness for trial.  See

Oriakhi v. United States, No. 3:CV-01-0850 (M.D. Pa.), Dkt. Entry 69.  There is no

indication on the docket that Oriakhi raised at that time, or any other, his inability to

proceed to trial based the February 4, 2004, confiscation of legal materials.  On April 28,

2004, a bench trial was held in that matter and judgment was entered in favor of

defendants.  (Id.)  The Third Circuit Court of Appeals recently affirmed that order.  See

Oriakhi v. United States, CA No. 04-2786, 2006 WL 314462 (3d Cir. February 10, 2006).

The second federal action pursued by Oriakhi, also filed in this Court, was a habeas matter filed pursuant to 28 U.S.C. § 2241 challenging the validity of a 1990 District of Maryland conviction on the basis that he was denied effective assistance of trial counsel.  That action, filed January 8, 2004, was summarily dismissed on June 25, 2004, on the grounds that a challenge to his underlying conviction could not be pursued under § 2241 in the district of confinement.  The petition was dismissed without prejudice to any right Oriakhi may have to request the Fourth Circuit Court of Appeals for an order authorizing the District Court of Maryland to consider a successive § 2255 motion pursuant to 28 U.S.C. § 2244(b)(3)(A).  See Oriakhi v. United States, No. 3:04-CV-0036 (M.D. Pa.)(C.J. Vanaskie), Dkt. Entry 9.  On April 21, 2005, the Third Circuit Court of Appeals summarily affirmed the dismissal of the petition.  See Oriakhi v. United States, CA No. 05-1811 (3d Cir. 2005)(unpublished opinion).

Finally, Oriakhi claims to have lost his "initial legal draft writings and report for plaintiff's family's civil case," Leroy Oriakhi v. Nassau County Jail, #04-CV-4201(SJF)(ETB), but notes that it is "still pending."  (See Dkt. Entry 34, Plaintiff's Opposition Brief, p. 10.)  The fact that the action is "still pending" negates Oriakhi's claim of "actual harm" in that matter due to the loss of his initial legal draft writings in that case.

In summary, Oriakhi has failed to meet his burden of demonstrating that he suffered actual harm or was otherwise adversely affected in his legal proceedings by

-14-

Wood's purported seizure of his legal materials.  The tort case went to trial, and Oriakhi does not specify how the purported confiscation of legal materials a few months before trial hampered the presentation of his case.  His other federal action was indisputable frivolous.  And his family action is still pending without any showing of prejudice from the events of February 4, 2004.

Oriakhi also claims that the unwarranted imposition of ten hours of extra duty, which took valuable time away from his legal research time, constitutes an adverse action stemming from Edwards' retaliation against him for assisting other inmates with their legal work.  (Dkt. Entry 34, Plaintiff's Opposition Brief.)  It is undisputed, however, that Oriakhi possessed contraband.  Thus, there was ample basis for imposing discipline.  Nor can it be said that such a sanction rises to the level of adverse action sufficient to support a retaliation claim.

Furthermore, Oriakhi cannot dispute that he was subject to some form of discipline for his possession of contraband.  Given the broad range of sanctions available to the UDC, ten hours of extra duty was not excessive.  Thus, there is no basis for inferring a causal relationship between the exercise of a protected right and the punishment imposed for possession of contraband.

As the record before this Court does not establish that Oriakhi's questioning of Wood about the missing legal research material was protected speech, or

that it served as the motivating factor for issuance of a misconduct for the possession of

contraband and the resulting discipline, and because Plaintiff can prove no adverse

harm as a result of the search or alleged deprivation of personal legal materials,

Defendants are entitled to judgment as a matter of law on this claim.

> D.    Oriakhi's Lack of Physical Injury
>        Precludes an Award of Damages for
>        Emotional Distress.

Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C.

§1997e(e), conditions a prisoner's claim for mental or emotional injury on a showing of

accompanying physical injury.  Under § 1997e(e), "[n]o Federal civil action may be

brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury."  The

"physical injury" requirement of § 1997e(e) may be satisfied by a

"less-than-significant-but-more-than-de minimis physical injury as a predicate to

allegations of emotional injury."  Mitchell, 318 F.3d at 534.

Defendants allege that Oriakhi's failure to show that he suffered any

physical injury precludes the award of damages for emotional distress under Bivens and

the FTCA.  In his opposition materials Oriakhi confirms that "the only physical part of this

action has transcended into an emotional injury."  (Dkt. Entry 39, Plaintiff's Sur Reply, p.

10.)   Thus, Oriakhi has failed to present any evidence on the record which could

reasonably be construed as proof of an actual physical injury in this matter.

Consequently, his damage claim is barred by § 1997e(e) and is subject to dismissal.

>    E.    Oriakhi's FTCA Claim for the Loss of his
>          Legal Materials is Subject to Dismissal
>          Pursuant to 28 U.S.C. § 1915(d) as
>          Frivolous.

The FTCA is a limited waiver of sovereign immunity permitting litigation against the United States "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); United States v. Muniz, 374 U.S. 150 (1963).  Liability under the FTCA is controlled by state law. 28 U.S.C. § 1346(b); Berman v. United States, 205 F. Supp. 2d 362, 364 (M.D. Pa. 2002).  Thus, Pennsylvania law controls in this case.

In his Complaint, Oriakhi identifies his FTCA claim as one of conversion. See Dkt. Entry 1, p. 4, ¶ 17.  In Pennsylvania, to succeed in a civil action for conversion, a plaintiff must establish that the defendant intentionally or knowingly "deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification."  Ride the Ducks of Philadelphia v. Duck Boat Tours, 138 Fed. Appx. 431, 433 fn. 1 (3d Cir. 2005)(quoting Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. 2003)).

It is undisputed that Oriakhi filed an administrative FTCA claim with the

-17-

BOP regarding the loss of his legal materials and it was denied.  <u>See</u> Dkt. Entry 34,

Plaintiff's Opposition Brief, Exhibit II; 28 U.S.C. §§ 2401(b), 2675(a).  Plaintiff avers that

he suffered both personal injury (emotional distress, loss of legal actions) and loss of

personal property as a result of the search.  His claim for property damage is identified

as $5.20, while his claim for personal injury is set at $ 2,000,000.  <u>See</u> Dkt. Entry 34,

Plaintiff's Opposition Brief, Exhibit II.

　　　　　Defendants contend Oriakhi cannot assert a viable FTCA claim because

Wood confiscated and destroyed only "nuisance contraband and seized legal documents

that Oriakhi could not remove from the library without violating prison rules."  (Dkt. Entry

28, Defendants' Brief in Support of Motion for Summary Judgment, p. 14.)  In other

words, Defendants suggest Oriakhi does not assert a sustainable FTCA claim because

Wood did not confiscate any of Oriakhi's personal legal materials.  As previously noted,

there is a dispute of fact as to this issue as Oriakhi has submitted a sworn declaration

stating his personal legal materials were confiscated as well as those of the inmates' he

was assisting.

　　　　　Assuming that his legal materials were lost and destroyed by Wood, he

would be permitted to obtain reasonable compensation for these materials.  Any claim

for emotional distress, however, is, as noted above, precluded by his lack of physical

injury.  As there has been no finding of a constitutional violation in this case, the only

judicable interest at stake now is Plaintiff's FTCA claim for the loss of property valued, by him, to be $5.20.  This amount of damages in controversy is considered trivial.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1088-92 (3d Cir. 1995)("We hold that § 1915(d) authorizes a court to dismiss an <u>in forma pauperis</u> claim if it determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial.); <u>see also</u> <u>Nagy v. Butner</u>, 376 F.3d 252, 257 (4th Cir.2004)("Nothing in the <u>in forma pauperis</u> statute, and nothing in 28 U.S.C. § 1915(e)(2)(B)(I) in particular, suggests that the de minimis value of a claim cannot be taken into account.")  Therefore, given the small value of the remaining claim, which cannot be resolved due to a dispute of fact which would necessitate a trial over a matter worth $ 5.20, the Court, in the interest of conserving scarce judicial resources and assuring that resources are used in the most effective manner possible, will dismiss this remaining claim as frivolous.

VI.    Conclusion

For the reasons set forth above, Defendants will be granted summary judgment.  An appropriate Order follows.[2]

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

---

[2] Oriakhi had moved for leave to submit additional sworn witness statements (Dkt. Entry 35), and to compel BOP officials to allow him to correspond with inmate witnesses (Dkt. Entry 41).  As the matters to which the witness statements relate – the confiscation of his legal materials – are not material to the disposition of the summary judgment motion, both motions will be denied.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FELIX ORIAKHI,                          :
                                        :
                    Plaintiff,          :
                                        :   CIVIL NO. 3:CV-05-0053
          v.                            :
                                        :   (CHIEF JUDGE VANASKIE)
TIMOTHY P. WOOD, ET AL.,                :
                                        :
                    Defendants.         :


O R D E R

NOW, this 31st DAY OF MARCH, 2006, for the reasons set forth in the

foregoing Memorandum, IT IS HEREBY ORDERED THAT:

    1.    Plaintiff's Motion to Submit Additional Witness
        Statements (Dkt. Entry 35) and his Motion for
        Mandamus to compel authorization to correspond
        with inmate witnesses (Dkt. Entry 41) are DENIED.

    2.    Defendants' motion for summary judgment (Dkt.
        Entry 25) is GRANTED.

    3.    The Clerk of Court is directed to enter judgment in
        favor of Defendants and against Plaintiff, and to mark
        this matter CLOSED.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania